# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1953 | **DATE** | 11/27/2000 |
| **CASE TITLE** | Cranberry Productions, Inc. d/b/a "Shear Madness" v. Maharishi Ayur Veda University | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/7/00 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss complaint [5] is denied. A status hearing is set for 12/7/00 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 28 2000 | |
| ✓ | Docketing to mail notices. | date docketed | 11 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RJ | courtroom deputy's initials | ED-7 FILED FOR DOCKETING date mailed notice | |
| | | Date/time received in central Clerk's Office  mailing deputy initials | |

CRANBERRY PRODUCTIONS, INC. )
d/b/a "SHEAR MADNESS", )
)
Plaintiff, )
v. ) No. 00 C 1953
)
MAHARISHI AYUR VEDA UNIVERSITY, )
)
Defendant. )

DOCKETED
NOV 28 2000

# MEMORANDUM OPINION AND ORDER

Plaintiff Cranberry Productions, Inc. ("Cranberry") is suing Defendant Maharishi Ayur Veda University ("Maharishi") for breach of a commercial real estate lease and for tortious interference with prospective economic advantage. Maharishi has moved for dismissal of the complaint under Federal Rule 12(b)(6) of Civil Procedure. For the reasons set forth below, Maharishi's motion is denied.

## Background

Cranberry leased from Maharishi a theater in the Blackstone Hotel for production of a performance entitled "*Shear Madness.*" The lease at issue was executed on February 1, 1999 and was a month-to-month lease terminable by either party upon 30 days notice. On November 11, 1999 Maharishi informed Cranberry that the hotel was to be closed due to high asbestos levels. On November 12, the hotel's air ducts were shut off and the hotel building was completely closed. One week later a court order was entered precluding entry into the hotel due to several allegations of building code violation by the City of Chicago. Maharishi is apparently disputing

these allegations. Cranberry's production of *Shear Madness* was halted on November 12, despite the advance sales of tickets to several shows. Cranberry alleges that Maharishi's failure to maintain the hotel in compliance with applicable laws was a breach of the lease, and that Maharishi's action in closing the hotel was a breach of the covenant of quiet enjoyment implied in the lease. Cranberry also alleges that Maharishi's action in closing the hotel constituted tortious interference with prospective business advantage by preventing several performances of *Shear Madness* for which Cranberry would have received substantial profits.

## Analysis

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). In deciding this motion to dismiss, the court may consider the lease, which was attached as an exhibit to the complaint, as part of the pleadings. *See Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

### I. Breach of the Lease

Maharishi contends that Cranberry's breach of lease claim must be dismissed because the express terms of the lease preclude Cranberry's recovery. Maharishi points to two paragraphs in the lease to support this contention:

6.a. Tenant acknowledges by execution of this Lease that Tenant has inspected the Premises and the Hotel and accepts the Premises in "AS IS" "WHERE IS" condition, all express or implied warranties as to the condition of the Premises being hereby expressly disclaimed by Landlord. . . .

8.a. Except to the extent, if any, prohibited by applicable law . . . Tenant waives all claims and rights of recovery against Landlord . . . for damage or injury to property and loss of business sustained by Tenant and resulting from the Hotel or the Premises or any part thereof or any equipment therein becoming in disrepair, or resulting from any accident in or about the Hotel. This paragraph shall apply particularly, but not exclusively, to flooding, damage caused by Hotel equipment and apparatus, water, snow, frost, steam, excessive heat or cold, broken glass, sewage, gas odors, excessive noise or vibration or the bursting or leaking of pipes, plumbing fixtures or sprinkler devices.

Contrary to Maharishi's contentions, these two provisions in the lease do not unambiguously preclude Cranberry's recovery for breach of the lease. A contractual term is ambiguous if it is susceptible to more than one reasonable interpretation. *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993) (citing *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir. 1988). If a contract is ambiguous, then extrinsic evidence must be considered to determine the intent of the parties. *See id.* Thus, the court must deny the motion to dismiss if it determines the contract to be ambiguous.

Accepting all of Cranberry's well-pleaded allegations as true, paragraph 8.a. does not unambiguously preclude Cranberry's recovery. As Cranberry points out in its response brief, this paragraph only waives Cranberry's right to recover for injuries or damages resulting from the premises "becoming" in disrepair. One reasonable interpretation of this provision is that it only precludes recovery for damage caused by conditions or defects that do not arise until after the lease has been executed. Although the complaint does not explicitly allege that the asbestos

condition pre-dated the lease, the plaintiff is not required to plead all of the particular facts that might be relevant under the liberal pleading requirements of the Federal Rules. *See Cook*, 141 F.3d at 328. Hence, under one reasonable interpretation of paragraph 8.a., the breach of lease claim would depend on when the asbestos condition was present - a factual determination that cannot be made on a motion to dismiss.

The disclaimers found in paragraph 6.a. are also insufficient to compel dismissal of the breach of lease claim. Cranberry's acceptance of the "AS IS, WHERE IS" disclaimer in the lease does not affect Cranberry's right to recover for breach of the covenant of quiet enjoyment. This covenant is implied in all leases in Illinois, and "is breached when the lessor substantially interferes with the the lessee's 'use and enjoyment of the premises.'" *See Infinity Broadcasting Corp. of Ill. v. Prudential Ins. Co. of America*, 869 F.2d 1073, 1075 (7th Cir. 1989) (citation omitted). Cranberry's complaint alleges that Maharishi wrongfully denied Cranberry access to the theater, thereby breaching this covenant. (*See* Compl. at ¶¶ 18-21). Accepting this allegation as true, Cranberry has a valid claim for breach of the lease.

Taking Cranberry's well-pleaded allegations as true and reading the complaint liberally, as the court must when considering a motion to dismiss, the court determines that paragraphs 6.a. and 8.a. of the lease do not unambiguously foreclose Cranberry's breach of lease claim.

## II. Tortious Interference with Prospective Economic Advantage

Maharishi argues that Cranberry's tortious interference claim should be dismissed for three reasons: 1) Maharishi's act of closing the hotel was not wrongful, 2) Maharishi's act was not directed against a third party, and 3) Cranberry only lost unknown potential customers, not an

existing economic relationship.

First, Maharishi argues that Cranberry did not adequately plead that Maharishi's act was wrongful. Under Illinois law, in order for interference to be tortious it must be wrongful. *See Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (1998); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 298 (7th Cir. 1981). Despite Maharishi's claim to the contrary, Cranberry's complaint does sufficiently allege the wrongfulness of Maharishi's decision to close the hotel. The complaint alleges that Maharashi "is presently contesting the allegations made by the City of Chicago that building code violations in the Blackstone Hotel were sufficiently serious or pervasive as to warrant the closure of the building" and that, in view of this, the decision to close the theater "was willful and wanton." (Compl. at ¶ 19). Maharishi argues that the decision could not have been wrongful if it had a privilege to close the hotel to protect public health, an interest of greater value than Cranberry's loss of business. (*See* Def. Reply at 6). But this introduces a factual question that cannot be resolved on the basis of the pleadings alone - the value to the public of shutting down the hotel versus the value to Cranberry of keeping it open. The question at this stage is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See North Broadway Motors, Inc. v. Fiat Motors of N. America*, 622 F. Supp. 466, 469 (N.D. Ill. 1984). Hence the court "cannot simply assume" that Maharishi's actions were justified. *See id.* The complaint adequately alleges that Maharishi's interference was wrongful.[1]

---

[1] Maharishi's argument that the complaint alleged only that Maharishi was "presently" contesting the City's allegations, rather than contesting them at the time of the closing, is also unavailing. On a motion to dismiss a court should read the allegations in the complaint liberally. *See Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996). Certainly Cranberry's allegations could be interpreted to encompass an assertion that Maharishi *never*

5

Second, Maharishi argues that its act was not directed "against a third party" as required by *Cavalieri-Conway v. L. Butterman & Assoc.*, 992 F. Supp. 995, 1012 (N.D. Ill. 1998). Cranberry responds that the closing was directed against the "persons who had purchased tickets in advance of scheduled performances that were later cancelled." (Pl. Response at 6). Maharishi does not respond to this characterization in its reply brief. Clearly the complaint alleges that Maharishi's act affected the advance ticketholders and potential ticketholders. Viewing this allegation in the light most favorable to Cranberry, the court finds that it sufficiently alleges an act directed against a third party.

Third, Maharishi argues that Cranberry did not have an existing economic relationship with the potential, unknown customers who would have bought tickets to the show. Maharishi cites *Dowd*, 693 N.E.2d at 370, for the proposition that such an identifiable, existing relationship is necessary to succeed on a claim of tortious interference with prospective economic advantage. The Seventh Circuit, however, has recently held that a plaintiff asserting tortious interference with prospective economic advantage is not required to "allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy" in order to survive a motion to dismiss. *See Cook*, 141 F.3d at 328; *see also Barrett v. Poag & McEwen Lifestyle Centers-Deer Park Town Ctr.*, No. 98 C 7783, 1999 WL 691850 at *8-10 (N.D. Ill. Aug. 26, 1999). Although Illinois courts may require more specificity in pleadings, *Cook* makes it clear that under the liberal federal pleading requirements, Cranberry's complaint is sufficient.

---

thought it was in violation of applicable laws at any time, leading them to subsequently contest the City's allegations.

6

## Conclusion

For the foregoing reasons, Maharishi's motion to dismiss Cranberry's complaint under Federal Rule 12(b)(6) is denied as to both counts.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: November 27, 2000